

**RECEIVED**

JUN 0 5 2019

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DEPUTY CLERK

**Supreme Court**
STATE OF LOUISIANA
New Orleans

CHIEF JUSTICE
BERNETTE J. JOHNSON          Seventh District
JUSTICES
GREG G. GUIDRY               First District
SCOTT J. CRICHTON            Second District
JAMES T. GENOVESE            Third District
MARCUS R. CLARK              Fourth District
JEFFERSON D. HUGHES III      Fifth District
JOHN L. WEIMER               Sixth District

JOHN TARLTON OLIVIER
CLERK OF COURT

400 ROYAL STREET, SUITE 4200
NEW ORLEANS, LA 70130-8102

TELEPHONE (504) 310-2300
HOME PAGE http://www.lasc.org

May 31, 2019

Hon. Scott S. Harris
Clerk, U.S. Supreme Court
Office of the Clerk
1 First Street, NE
Washington, D.C. 20543

**19-mc-87-UNA**
**no pending cases**

Re:      *In Re: Dante Jerome Butler*
         Louisiana Bar Roll no. 33753
         La. Supreme Court docket no. 2018-B-1812

Dear Mr. Harris:

Enclosed please find a copy of the decision rendered by this Court in the above-entitled matter, which is self-explanatory. The case became final in this Court on **May 22, 2019.**

With kindest regards, I remain,

Very truly yours,

John Tarlton Olivier
Clerk of Court

By:      Theresa McCarthy
         Deputy Clerk

TM:pal
Enclosure
ccs:     Hon. Lyle W. Cayce, Clerk,                              Hon. Rodd Naquin
         U.S. Court of Appeals, Fifth Circuit                    Clerk, 1st Circuit Ct. Of Appeal
         Hon. William W. Blevins, USDC, Eastern District         Hon. Lillian Evans Richie
         Hon. Michael McConnell, Clerk, USDC, Middle District    Clerk, 2nd Circuit Ct. Of Appeal
         Hon. Tony R. Moore, USDC, Western Dist.                 Hon. Renee Simien
         Charles B. Plattsmier, Disciplinary Counsel             Clerk, 3rd Circuit Ct. Of Appeal
         Michelle LaRose, Director of Finance, LSBA              Hon. Justin I. Woods
         Donna Roberts, Administrator, Disciplinary Board        Clerk, 4th Circuit Ct. Of Appeal
         U.S. Surface Transportation Board                       Hon. Cheryl Q. Landrieu
         Regional Director, IRS                                  Clerk, 5th Circuit Ct. Of Appeal
         Sandra Vujnovich, Judicial Administrator
         Scott T. Morris, Off. of General Counsel, Social Security Administration
         Cynthia Cotton, Notarial Division, Secretary of State Office
         Sheral Kellar, Asst. Secretary, Off. of Wrkrs. Comp. Admin.

SUPREME COURT OF LOUISIANA

NO. 2018-B-1812

MAY 0 8 2019         IN RE: DANTE JEROME BUTLER

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Dante Jerome Butler, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

By way of background, Charles Taylor and Shawna Terrell were the principals of an organization known as the Knowledge Center Temple ("KCT"). Mr. Taylor and Ms. Terrell held themselves out as "pro se paralegals" who assisted incarcerated individuals with their post-conviction relief proceedings. Mr. Taylor and Ms. Terrell are not attorneys, nor are they inmates who provide legal services and assistance to other inmates as "inmate counsel substitutes" under regulations of the Louisiana Department of Public Safety and Corrections.[1]

In 2014, respondent was approached by Mr. Taylor, who said that he was looking for an attorney to "go over his work." Respondent knew that Mr. Taylor and Ms. Terrell were not attorneys, but he nevertheless agreed to "proofread" the legal work done by Mr. Taylor and Ms. Terrell on behalf of individuals who

_____

[1] See La. DPSC Reg. No. B-05-004, which defines "counsel substitutes" as "persons not admitted to the practice of law, but offenders who aid and assist, without cost, an accused offender in the preparation and presentation of his defense and/or appeal."

CRICHTON, J., CONCURS IN PART, DISSENTS IN PART AND ASSIGNS REASONS.

contacted KCT. The arrangement between KCT and respondent as to the work to be performed, or the fee arrangement, was never reduced to writing.

In May 2015, Raymond Casaday contacted KCT after he learned about its services from individuals at the correctional center where he was incarcerated. Mr. Casaday advised that his criminal matter was pending on appeal and that he was seeking assistance with the later filing of an application for post-conviction relief. Mr. Taylor determined the amount of the fee for the services to be provided would be $7,000. Mr. Casaday sent $500 to KCT on June 12, 2015, but knowing that Mr. Taylor and Ms. Terrell were not licensed to practice law, he advised Mr. Taylor that he wanted an attorney to handle the matter.

On June 20, 2015, Ms. Terrell wrote to Mr. Casaday, advising that she had received the funds and that "we do have a lawyer for you, so when you're ready to start this process please don't hesitate to let us know." On June 28, 2015, Ms. Terrell wrote Mr. Casaday again, advising that she had done a case analysis and could "see where we can get you another trial based upon newly discovered evidence." Mr. Casaday was also advised in this correspondence that respondent would be representing him. Mr. Casaday subsequently spoke with respondent, who confirmed the fee for the services to be provided.

On July 15, 2015, Mr. Casaday forwarded an additional $6,500 to KCT via a check payable to Ms. Terrell, for a total of $7,000. Ms. Terrell cashed the check and provided respondent with a cash payment of $2,000 for his services. On July 30, 2015, Mr. Taylor promised to provide Mr. Casaday a receipt "showing what you have paid to us as well as the lawyer."[2]

---

[2] This letter was written on stationery which contained the name and address of both KCT and respondent. Respondent denied that he gave KCT permission to use his name and address on its stationery. However, we note that the record contains a total of nine such letters dated between July 30, 2015 and January 7, 2016, including letters of August 31, 2015, October 19, 2015, and November 22, 2015 which were copied to respondent.

In return for the fee paid to KCT, Mr. Taylor and Ms. Terrell gave Mr. Casaday legal advice and prepared motions, a "pro se" writ application,[3] and a memorandum in support of an application for post-conviction relief. Mr. Taylor sent respondent drafts of the memorandum in support of Mr. Casaday's application for post-conviction relief, which respondent reviewed, commented upon, and sent back to Mr. Taylor. Many of respondent's comments were not incorporated into Mr. Taylor's successive drafts; however, because respondent did not consider himself to be Mr. Taylor's supervisor, respondent did not request or require review and approval of a final draft of the document prior to its submission to Mr. Casaday or a court. Respondent did not sign or file any pleadings or memoranda on behalf of Mr. Casaday.

Ultimately, Mr. Casaday refused to sign the post-conviction relief application prepared by KCT due to its poor quality. On October 16, 2016, Mr. Casaday wrote to respondent directly regarding the agreement that respondent would complete the application for post-conviction relief for the $7,000 that Mr. Casaday paid. Mr. Casaday asked respondent to meet with him and said that he had been relocated to a closer prison facility. Mr. Casaday wrote, "If you are not going to help me do my post-conviction then just let me know this and return my money to me so I can get someone who could help me." On October 21, 2016, respondent replied to Mr. Casaday, reminding him "that you are a client of C/S [Charles Taylor/Shawna Terrell]." On September 28, 2017, several months after the formal charges were filed in this matter, respondent refunded the sum of $2,000 to Mr. Casaday.

Respondent also worked with KCT on a legal matter for Jeremy Daigre. In June 2015, Craig Daigre, Jeremy's father, gave respondent a check for $6,000. Respondent cashed the check, retained the sum of $2,000 as his fee, and delivered

---

[3] The writ application filed with this court was denied. *See State v. Casaday*, 15-0607 (La. 2/5/16), 186 So. 3d 1162.

the remaining funds to Ms. Terrell.  In April 2016, Mr. Taylor forwarded to respondent a "Supervisory Writ of Habeas Corpus to Vacate a Prejudicial Illegal and/or Unconstitutional Habitual Offender Multiple Bill Sentence" which Mr. Taylor had prepared on behalf of Mr. Daigre.  In August 2016, the trial court denied the motion that Mr. Daigre submitted "pro se" to the court.  In September 2017, several months after the formal charges were filed in this matter, respondent filed a motion to reconsider sentence on behalf of Mr. Daigre.

### DISCIPLINARY PROCEEDINGS

In October 2016, Mr. Casaday filed a complaint against respondent with the ODC.  In May 2017, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.4(a) (a lawyer shall not share legal fees with a nonlawyer), 5.5(a) (a lawyer shall not practice law in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so), and 8.4(a) (violation of the Rules of Professional Conduct).

Respondent answered the formal charges and admitted that he agreed to proofread legal work performed by Mr. Taylor and Ms. Terrell.  However, he denied that he entered into a lawyer-client relationship with Mr. Casaday or with Mr. Daigre.  He further denied that he acted knowingly or intentionally in facilitating the unauthorized practice of law or in sharing legal fees with nonlawyers, and suggested that "his misconduct, if any, was committed negligently."

### *Formal Hearing*

This matter proceeded to a hearing conducted by the hearing committee in October 2017.  The ODC called the following witnesses to testify at the hearing: Mr.

4

Casaday, Jeremy Daigre and his father, Craig Daigre, and Ms. Terrell.[4] Respondent testified on his own behalf and on cross-examination by the ODC. He called no witnesses to testify before the committee.

*Hearing Committee Report*

Based upon the evidence and testimony presented at the hearing, the hearing committee made the following findings of fact:

The committee found that respondent shared fees with nonlawyers, specifically Mr. Taylor and Ms. Terrell. The documentary evidence shows that KCT charged a $7,000 fee to Mr. Casaday. Ms. Terrell paid respondent $2,000 in cash on July 15, 2015, and respondent deposited the cash into his bank account the next day. Respondent refunded the $2,000 fee to Mr. Casaday on September 28, 2017, a little more than two weeks before the hearing in this matter. In Mr. Daigre's case, the evidence shows that Mr. Daigre's father wrote a check made payable to respondent for $6,000. The check had the notation "appeal process" handwritten on the memo line. Respondent testified that he cashed the check, took $2,000 as his fee, and gave the balance to Ms. Terrell.

The committee also found that respondent facilitated the unauthorized practice of law by working with nonlawyers to render legal services related to post-conviction proceedings. Respondent testified that when he agreed to work with Mr. Taylor and Ms. Terrell, he knew they were not attorneys but were rather "pro se paralegals" who rendered legal services to incarcerated individuals. Although respondent contends that he only proofed legal pleadings sent to him by Mr. Taylor and Ms. Terrell, the evidence establishes that respondent's work went well beyond proofreading. The committee found by clear and convincing evidence that

---

[4] Mr. Taylor could not be located. Ms. Terrell said that he "is in hiding" and described him as a "scammer."

respondent rendered legal services to both Mr. Casaday and Mr. Daigre and that both men were respondent's clients.

Based on these factual findings, the committee found that respondent violated Rules 5.4(a), 5.5(a), and 8.4(a), as charged in the formal charges.

The committee determined that respondent knowingly violated duties owed to the legal profession. His conduct caused actual harm to Mr. Casaday and Mr. Daigre, who paid for legal services and reasonably believed that a licensed attorney would provide same; however, "they received nothing more than pointless drivel masquerading as legal documents that Respondent claimed to have 'proofed.'" Furthermore, the unauthorized practice of law by a non-licensed person is a violation of state law and is an affront to the Louisiana Supreme Court's exclusive and plenary power to define and regulate all facets of the practice of the law. The baseline sanction for respondent's misconduct is disbarment.

In mitigation, the committee found the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and inexperience in the practice of law (admitted 2011). In aggravation, the committee found the following factors: a dishonest or selfish motive and refusal to acknowledge the wrongful nature of the conduct.

In formulating a recommendation for an appropriate sanction, the committee considered *In re: Morris*, 14-1067 (La. 10/15/14), 149 So. 3d 229. In *Morris*, the respondent had an arrangement with Citizens Against Legal Abuse ("CALA"), a non-licensed domestic corporation that provided legal services to prospective clients. CALA and the respondent maintained adjacent offices, and respondent was advertised as available to represent clients referred by CALA. To facilitate the arrangement, attorney-client contracts with letterhead that included the name of CALA and of the respondent were given to prospective clients. In exchange for the

6

referral, the respondent would remit to CALA a percentage of the fee paid by the client, characterizing the payments as "donations." CALA retained primary responsibility for setting, quoting, and collecting legal fees from prospective clients. After concluding the contractual terms with the client, a CALA employee would contact the respondent to advise her that she had been retained and to provide details regarding the legal matter. Under these circumstances, the court found that the respondent shared legal fees with a nonlawyer, facilitated the unauthorized practice of law by a nonlawyer, and shared fees with a corporation not licensed to practice law, in violation of Rules 5.4(a), 5.5(b), and 7.2(b) of the Rules of Professional Conduct. While recognizing that the baseline sanction was disbarment, the court deviated downward to a three-year suspension in light of the significant mitigating circumstances present.

The committee found that *Morris* is similar to the case at hand. While the baseline sanction for respondent's knowing violation of Rules 5.4(a), 5.5(a), and 8.4(a) is disbarment, the committee agreed that the appropriate sanction is a three-year suspension from the practice of law, with an order of restitution. The committee also recommended that respondent be assessed with costs and expenses.

Respondent filed an objection to the severity of the sanction recommended by the hearing committee.

*Disciplinary Board Recommendation*

After reviewing this matter, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous, and that the committee correctly found respondent violated the Rules of Professional Conduct as charged. Despite at all times knowing that Mr. Taylor and Ms. Terrell were not lawyers, respondent agreed to and did assist them in providing legal services to prison inmates, in violation of Rule 5.5(a), and shared in fees received from the prisoners

for those services, in violation of Rule 5.4(a). These violations establish the derivative violation of Rule 8.4(a). Further, respondent admitted to the material facts giving rise to the rule violations in his sworn statement and hearing testimony. He subsequently admitted all charged violations in his brief to the disciplinary board.

The board determined that respondent violated duties owed to his client, the public, and the profession. Respondent acted knowingly in facilitating the unauthorized practice of law by KCT and in sharing fees with them. Respondent knew that Mr. Taylor and Ms. Terrell were not lawyers, yet he willingly assisted them in the preparation of legal pleadings and shared in fees for those services. Respondent's conduct caused actual harm to Mr. Casaday and Mr. Daigre. Mr. Casaday paid a total of $7,000 and Mr. Daigre paid a total of $6,000 for legal work prepared by nonlawyers which respondent "proofed." In each case, respondent received $2,000 for his work. Further, his actions contributed to a delay in these prisoners having licensed lawyers fully review their cases and pursue any legitimately available procedures for obtaining post-conviction relief. Considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board found the applicable baseline sanction is suspension.

The board found the only aggravating factor present is vulnerability of the victims. In mitigation, the board recognized the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law, and character or reputation. The board specifically rejected respondent's argument that he should be credited with the mitigating factor of a timely good faith effort to rectify the consequences of his misconduct. According to respondent, he offered to enroll as counsel and return all fees he received from Mr. Casaday, and he has now undertaken to represent Mr. Daigre in his motion to reduce sentence. However, the board pointed out that as far back as the fall of 2016, Mr. Casaday began requesting

8

that respondent either move forward with his post-conviction relief or return his money. Mr. Casaday testified before the hearing committee in October 2017 that respondent sent him a letter "not long ago" saying he would handle the post-conviction matter. Mr. Casaday no longer trusted respondent and wanted his money back. Respondent returned the $2,000 to Mr. Casaday by letter dated September 28, 2017, approximately three weeks before the hearing. Under these circumstances, the board found there was not a timely and good faith effort on respondent's part to rectify the consequences of his misconduct.

Turning to the issue of an appropriate sanction, the board noted that a wide range of sanctions have been imposed in cases involving the unauthorized practice of law, up to and including disbarment, depending upon the specific facts and circumstances presented. The ODC relies on the disbarment cases, which often involve systematic delegation of professional responsibilities to nonlawyer staff, in arguing that disbarment should be the baseline sanction here. However, the board found the circumstances presented in those cases are distinguishable from the facts of the instant matter, which involves only two instances of a young lawyer assisting a nonlawyer whom the respondent perceived as a "jailhouse lawyer" in the unauthorized practice of law. Further, one of the clients affected has chosen to keep respondent as his attorney and respondent has continued to represent him at no additional charge.

The board also found distinguishable the *Morris* case relied upon by the committee. The respondent in *Morris* was charged with misconduct relating to the CALA arrangement; however, additional attorney misconduct was present, including lack of diligence, failure to communicate, and failure to return an unearned fee. The respondent was also found to have converted more than $28,000 in client funds, made false statements to the ODC, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. The court focused on the conversion

as the "most egregious conduct" and determined that while disbarment would ordinarily be appropriate for such misconduct, a downward deviation to a three-year suspension was warranted in light of the mitigating factors present.

On the other hand, in cases in which an attorney has engaged in an isolated instance of assisting a nonlawyer in the unauthorized practice of law, the court has imposed relatively short periods of suspension. In *In re: Mopsik*, 04-2395 (La. 5/24/05), 902 So. 2d 991, the respondent was suspended for sixty days for abdicating his professional responsibilities in a client matter to his paralegal and failing to exercise any supervision over the paralegal's activities in the matter. The court concluded that Mopsik violated Rules 5.3 (responsibilities regarding nonlawyer assistance) and 5.5, and that although his conduct was negligent, a suspension was warranted due to the following aggravating factors: a prior disciplinary record, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law.

In *In re: Burns*, 17-2153 (La. 5/1/18), 249 So. 3d 811, the respondent sent a paralegal to participate in a pre-trial conference due to a conflict with another case. The paralegal did not inform the court or the other lawyers that he was not a lawyer. The board found that Burns violated Rules 5.5(a) and 8.4(a), and concluded that a sixty-day suspension was the applicable baseline sanction. However, because Burns had given false testimony during the disciplinary proceeding, the board found that an upward deviation was warranted and recommended that Burns be suspended for one year and one day. The court concurred in the finding of the rule violations and imposed a one-year suspension with Ethics School.

Considering the jurisprudence, the board determined that respondent's behavior was far less grievous than the cases involving a more pervasive pattern and practice of the facilitation of the unauthorized practice of law by nonlawyers and fee sharing, which have resulted in disbarment. The circumstances of this matter are

more in line with those in *Mopsik* which involved misconduct in the handling of one case. However, unlike respondent, Mopsik was a seasoned lawyer with almost forty years of experience at the time of his misconduct. He also had a prior disciplinary record and refused to acknowledge his wrongful conduct. Conversely, respondent was inexperienced in the practice of law when he first encountered Mr. Taylor. Furthermore, he was actually involved with only two clients of KCT; he has now undertaken the full representation of one of the "clients," Jeremy Daigre, without charging an additional fee; multiple letters were submitted in support of respondent's good character; and he has no prior disciplinary offenses.

Accordingly, the board recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to a one-year period of probation and attendance at Ethics School. The board also recommended that respondent be assessed with the costs and expenses of the proceeding.

One board member concurred in the sanction recommended by the board. Two board members dissented and would recommend a suspension of not less than one year and one day.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

### DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the

11

manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

There is clear and convincing evidence in the record that respondent improperly shared legal fees with Mr. Taylor and Ms. Terrell and assisted them in practicing law. Respondent knew that Mr. Taylor and Ms. Terrell were not lawyers, yet he willingly assisted them in the preparation of legal pleadings and shared in fees for those services. Based on these facts, respondent has violated the Rules of Professional Conduct as charged by the ODC.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent's conduct was knowing. He violated duties owed to his clients, the public, and the legal profession, causing actual harm to Mr. Casaday and Mr. Daigre. Considering the ABA's *Standards for Imposing Lawyer Sanctions*, the baseline sanction in this matter is suspension.

The record supports the aggravating factor of vulnerability of the victims. The record supports the following mitigating factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law (admitted 2011), and character or reputation.

With respect to the issue of discipline, we agree with the disciplinary board that a wide range of sanctions have been imposed in cases involving the unauthorized practice of law, up to and including disbarment, depending upon the specific facts and circumstances presented. While we do not find respondent's conduct warrants disbarment, it is important to note that in cases involving fee sharing with a nonlawyer, "we have imposed a suspension of one year and one day." *In re: Watley*, 01-1775 (La. 12/7/01), 802 So. 2d 593. Furthermore, in *In re: Mopsik*, 04-2395 (La. 5/24/05), 902 So. 2d 991, we imposed an actual period of suspension for the negligent facilitation of the unauthorized practice of law, suggesting that where, as here, knowing misconduct is at issue, an actual period of suspension would certainly be warranted.

Based on this jurisprudence, we will reject the recommendation of the majority of the disciplinary board that respondent receive a fully deferred suspension. Rather, respondent shall be suspended from the practice of law for eighteen months, with all but one year deferred, subject to a one-year period of unsupervised probation. Respondent shall also be required to attend Ethics School.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Dante J. Butler, Louisiana Bar Roll number 33753, be and he hereby is suspended from the practice of law for a period of eighteen months. It is further ordered that all but one year of this suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of one year. As a condition of probation, respondent is ordered to attend and successfully complete the Louisiana State Bar Association's Ethics School. The probationary period shall commence from the date respondent and the

ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**SUPREME COURT OF LOUISIANA**

**NO. 2018-B-1812**

MAY 0 8 2019

**IN RE: DANTE JEROME BUTLER**

**ATTORNEY DISCIPLINARY PROCEEDING**

**CRICHTON, J., concurring in part and dissenting in part.**

I agree with the majority's determination that respondent has violated the Rules of Professional Conduct as charged. However, I disagree with the sanction imposed, as I find it too harsh under the particular circumstances.

Although the violations here are indeed serious and fall well below the standard expected in the legal profession, I find the majority failed to adequately consider the mitigating factor of respondent's inexperience in the practice of law at the time this arrangement began. Specifically, respondent was admitted in 2011, and in 2014, he entered into this particular fee arrangement with the non-lawyers. In my view, a mere three years into the practice of law at the time respondent's misconduct began is a significant mitigating factor in this matter. *See generally*, *In Re: Abdalla*, 17-453 (La. 10/18/17), 236 So.3d 1223 (Crichton, J., dissenting from the sanction imposed as too harsh, finding significant mitigating factors the majority failed to consider). Consequently, I dissent from the majority's sanction, and would order respondent to be suspended for one year, with all but six months deferred, followed by a one year period of probation with conditions (including attendance and successful completion of a session of the Louisiana State Bar Association's Ethics School).